ALBERTUS LARROWE, RESPONDENT, *v.* HERMAN J. LEWIS, D. HORATIO LEWIS AND HARRY LEWIS, APPELLANTS.

*Contract for the sale of railroad ties — when clear and explicit provisions thereof cannot be varied by proof of a custom existing at the place and known to both parties.*

This action was brought by the plaintiff, as an assignee of one Reynolds, to recover the sum of $483.12, alleged to have been paid by Reynolds to the defendants, over and above the amount which they were entitled to receive under a written contract entered into between them, by which Reynolds offered to give "forty-seven cents for your (the defendants) white and yellow oak, and thirty-seven cents for black ash, cherry, red oak, chestnut, butternut and slippery elm ties, piled up on the flats below the mill." The claim of over-payment was founded upon the fact that of the ties received some were "firsts" and some were "seconds," and it was claimed that only half the prices named were to be paid for the latter.

Upon the trial the referee found, upon testimony received against the defendants' objection and exception, that a known and established custom or rule existed at the place in question relating to the inspection of railroad ties, by which a tie, known as a "second," was taken at one-half of the price of a tie known as a "first," that Reynolds and the defendants were familiar with this custom and rule, and that the defendants were bound to accept different prices for the different qualities of ties as established by the said custom.

*Held,* that the referee erred in so finding.

That, under the contract, the defendants were required to furnish and deliver to Reynolds merchantable and proper first-class railroad ties, and that Reynolds was required to accept all such ties and pay therefor the stipulated price, having, however, the right to inspect such ties.

APPEAL from a judgment in favor of the plaintiff, entered in Livingston county, on the report of a referee.

*E. W. Packard,* for the appellants.

*E. A. Nash,* for the respondent.

On the 23d day of May, 1881, one T. J. Reynolds made and entered into a contract with the defendants, who were copartners doing business under the firm name of Lewis Brothers, for the purchase of a quantity of railroad ties. The contract was in writing and of which the following is a copy:

"*May* 23, 1881.

" Messrs. Lewis Bros. :

. " Gents : — I will give 47 cents for your white and yellow oak, and 37 cents for black ash, cherry, red oak, chestnut, butternut and slippery elm ties, piled up on the flats below the mill, you to give me all you can get during the season, suitable for rafting. Ties to be counted and paid for before put in the river; you to put them in the river as directed by me.

" T. J. REYNOLDS."

" We accept your offer.

"LEWIS BROS."

Subsequent to the execution of this contract, Reynolds paid to the defendants on account thereof the sum of $3,000, and accepted and removed from the defendants' premises a large quanity of ties, and thereafter prepared a statement of the account between the defendants and himself, respectings such dealings, from which it was made to appear that he had paid to the defendants the sum of $483.12 over and above the contract-price for all ties received by him. This account and demand for such overpayment was assigned by Reynolds to the plaintiff, who brought this action to recover the amount thereof. The referee reported in favor of the plaintiff for the amount claimed and from the judgment entered on such report this appeal is taken.

Childs, J. :

In the statement of account prepared by Reynolds, showing an overpayment for ties, the defendants were charged with the moneys paid on the contract and credited with the ties received as " firsts " and " seconds," the " firsts " at the price stipulated in the contract, and the " seconds " at one-half the contract-price, and thus the overpayment, to recover which this action was brought, is made to appear.

Upon the trial, W. H. Hallock, a dealer in railroad ties, was called as a witness by the plaintiff, and testified that the sized tie used by the Delaware, Lackawanna and Western Railroad was " eight feet long, eight inch face and six inches thick, flattened with both sides of even thickness." He was then asked " how are the ties of less dimensions than the specifications of a road designated ? A. They are billed to railroad companies as second class ties, they are classified as firsts and seconds. Q. How do they differ as to price ? A.

That depends on the railroad, on the Delaware Lackawanna and Western Railroad, and most railroads, a second class tie only brings one-half of the price of a first-class. On some branches of the Erie Railroad it is different. That is the rule on all the other railroads in western New York, of which I have any knowledge, except the New York Central.

It appeared from the testimony of the defendants, that they understood that it was the custom of railroad companies in the purchase of ties, to classify them as first and second quality. Upon this testimony the referee bases his report for the plaintiff, as appears by his findings of fact and conclusion of law stated in his report as follows : "Ninth. That said Reynolds and said defendants were familiar with the known and established customs and rules relating to the inspection of railroad ties in the locality of Portage and in western New York. Tenth. That according to the customs and rules aforesaid a tie known as "second" is taken and established at one-half the price of a tie known as a "first" of the same kind of timber or class. And I find as conclusions of law : First. That the defendants were bound to accept, under their contract with Reynolds, of an inspection and price of different classes of ties, according to the known and established rules and customs among railroads and dealers in and manufacturers of railroad supplies and ties in western New York.

Upon these findings and this conclusion, judgment is directed for plaintiff for the amount, and upon the basis as claimed by him in the statement of account before referred to. It requires no argument in support of defendants' claim that the judgment cannot be sustained on the theory adopted by the referee, as disclosed in his findings. Under the contract in question, the defendants were required to furnish and deliver to the plaintiff's assignor merchantable and probably first-class railroad ties of the kinds of timber specified, and he was required to accept all such ties offered and pay therefor the stipulated price, having the right to inspect such ties for the purpose of selecting such as he was required to accept in performance of the defendants' contract. No element of uncertainty is found in the contract; the language employed is neither technical, indefinite or equivocal. Therefore, the testimony quoted was improperly received under the objection and exception of the

defendant, and such ruling would afford good ground for a reversal of the judgment, were it necessary to place our decision upon that ground. (*Bradley* v. *Wheeler*, 44 N. Y., 495 ; *Lombardo* v. *Case*, 45 Barb., 95.)

The referee, as we have seen, bases his decision upon a custom which he finds to be established among dealers in railroad ties, and because of the existence of this "custom," interpolates into the contract a provision for the purchase and sale of a class of ties not embraced therein, at a price different from that agreed upon by the parties    The defendants had the right to contract for the sale of first class ties only, reserving all other qualities, if any, for some other market or purchaser, and the court had no power to extend this contract so as to embrace matters not within the contemplation of the parties, or covered by its terms.   Such is the effect of this decision of the referee, and it finds no support in the language of the contract or the law of the land.

Testimony was given by the plaintiff tending to show that the defendants, at the time of the inspection and delivery of the ties, consented to the classification "firsts" and "seconds," and that the ties should be accepted and paid for on that basis.   The defendants controverted this testimony, and · insisted that they refused to acquiesce in such classification, but on the contrary, at all times, claimed payment at the contract-price for all ties accepted by Reynolds, and the referee, at the request of defendants, has found "that defendant, at times, claimed that under the said contract with Reynolds, he was obliged to pay them the price agreed upon for all ties suitable for railroad purposes, of any class, and also those sawed under his and Griffin's suggestions, and defendants refused to and did not at times recognize or consent to the classifications of said ties so made by said Tallman, and so notified said Reynolds and said Tallman."   This finding emphasizes the intention of the referee to rest his decision solely on the ground of "custom," as stated in his report, and to hold that this important modification of the contract was worked out by the "custom" referred to, and without the agency or consent of the parties thereto, this disposition of the case cannot be sustained upon any theory warranted by law.   Other questions were raised on the argument of this appeal, but as a new trial must be had, it becomes

unnecessary to examine or pass upon the same, as they will necessarily be considered and disposed of on the trial.

The judgment should be reversed, and a new trial ordered before another referee, costs to abide event.

HAIGHT and BRADLEY, JJ., concurred in the result.

ANGLE, J. :

The original written contract was executory and it has so been practically understood and construed by the parties. The law implies in every such contract for the sale of merchandise that it shall be of merchantable quality and such as will bring at least the average price. (*Howard* v. *Hoey*, 23 Wend., 350; *Sprague* v. *Blake*, 20 id., 61; *Hamilton* v. *Ganyard*, 3 Keyes, 45.)

The contract only covered railroad ties of that character. The vendors could not under it be required to deliver, nor could the vendee be required to accept ties of an inferior character. The controlling question in this case arises with reference to the ties known as " seconds." The evidence is conflicting as to the character of these ties, and as to the number of them that were " seconds," but the referee has found that certain numbers were " seconds " and we are not at liberty to reverse such finding upon the evidence. The referee was not specifically requested on behalf of either party to find upon the issue made by defendants' denial of the allegation in the complaint to the effect that the defendants after the making of the written contract delivered to Reynolds certain quantities of railroad ties called " seconds," which Reynolds agreed to take of defendants at prices by them agreed upon. There was evidence upon both sides as to this issue ; on the part of the plaintiff tending to show that it was agreed upon at one-half the price of " firsts ; " on the part of the defendants there is evidence tending to show that at the time of the inspection and classification of the ties spoken of in the evidence the defendants insisted that under the contract they did not know anything about " first " and " second " class ties. On the part of plaintiff. Reynolds (his assignor), denies that anything of this kind was said in his presence The referee finds upon that issue (fifth finding of fact) that the ties were inspected and upon such inspection it was found that there were certain ties (specifying the numbers) known and accepted as

firsts, and certain numbers (specifying them) were known and accepted as seconds or half ties.

The referee also finds with regard to Tallman's inspection that the defendants in general acquiesced in the inspection made by him. But the subsequent findings and conclusions of the referee are not based upon and consistent with the above findings. He finds " that the defendants referred to and did not at times recognize or consent to the classification of said ties so made by said Tallman, and so notified said Reynolds and said Tallman. See also findings *f, g, h,* in defendant's ninth request to find, and the ninth and tenth findings of fact and the first conclusions of law which are examined in the opinion of Justice CHILDS and upon which he concludes that a new trial should be had, a conclusion in which I concur.

Judgment reversed and new trial ordered before another referee, with costs to abide the event.

Present. — BRADLEY, ANGLE and CHILDS, JJ.

Judgment reversed and new trial granted before another referee costs to abide event.